IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHER DIVISION
No. 7:18-CV-14-D

| | | |
|---|---|---|
| BRAD R. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| REBECCA ALLEN, et al., | ) | |
| | ) | |
| Defendant. | ) | |

On January 26, 2018, Brad R. Johnson ("Johnson" or "plaintiff") filed his first amended complaint ("complaint") asserting claims under 42 U.S.C. § 1983 against numerous defendants [D.E. 6]. Thereafter, defendants moved to dismiss Johnson's complaint for failure to state a claim upon which relief can be granted [D.E. 11, 29, 39, 42]. Johnson responded in opposition [D.E. 31, 48, 54, 55]. Defendants moved to strike Johnson's response [D.E. 50, 58, 60]. Johnson has twice moved for leave to file an amended complaint [D.E. 34, 64], and moved for leave to file a surreply [D.E. 52]. As explained below, the court grants defendants' motions to dismiss, dismisses the complaint, denies Johnson's motions for leave to amend as futile, denies Johnson's motion for leave to file a surreply, and denies defendants' motions to strike as moot.

I.

On December 5, 2017, Principal Michael Hodges ("Hodges") and Assistant Principal James Simmons ("Simmons") interviewed SMJ, Johnson's 16-year old daughter and student at South Brunswick High School, concerning SMJ's unwanted receipt of a pornographic image of another male student and SMJ's transmission of that image to other students. See Compl. [D.E. 6] ¶

13(a)(1). Simmons and Hodges asked SMJ write and sign a statement detailing her knowledge of the image. See id. In her statement, SMJ wrote that she had received an unwanted picture of a male student, that she told her friends about the picture, and that she sent the picture to her friends after they requested to see the picture. See id.

Later that day, Rebecca Allen ("Allen") and Brandon Fuller ("Fuller"), detectives from the Brunswick County Sheriff's Department, came to the school to interview students concerning the image. See id. ¶ 13(a)(2). Hodges gave Allen and Fuller SMJ's signed written statement. See id. Allen and Fuller then interviewed several students, including SMJ, concerning their knowledge of the image. See id. Allen and Fuller interviewed SMJ in a meeting room at the school with the door closed. See id. ¶ 13(c)(1). During the interview, Allen and Fuller asked SMJ if they could search her tablet device. See id. ¶ 13(c)(2). SMJ agreed to the search. See id. Before the interview, Simmons called SMJ's home and left a message informing SMJ's parents that detectives would be speaking with SMJ. See id. ¶ 13(d)(1). SMJ's mother returned Simmons's phone call, but she did not consent to the interview. See id. Johnson also called Simmons and told Simmons that he did not consent to the interview, and that if SMJ's mother consented, that such consent was withdrawn. See id. ¶¶ 13(d)(2), (3).

On December 6, 2017, Johnson used complaint procedures on the Brunswick County Sheriff's Department website to complain about the interview. See id. ¶ 14(a). Captain Mose Highsmith ("Highsmith"), a staff attorney for the Brunswick County Sheriff's Office, responded to Johnson's complaint. See id.; [D.E. 6-3]. Highsmith told Johnson that: (1) detectives identified SMJ as a potential witness in a matter concerning pornographic images being transmitted via cellphones to students; (2) Allen and Fuller asked school officials to put them in contact with SMJ so they could ask SMJ if she had any information and to determine if SMJ had been a victim of a

crime; (3) school officials requested permission from SMJ's mother to interview SMJ, and SMJ's mother granted permission; and (4) SMJ asked detectives to close the door and voluntarily provided detectives information concerning the image. See [D.E. 6-3] 7–8. Highsmith also told Johnson that SMJ was not in custody during the interview. Thus, the detectives were not required to obtain parental permission before speaking with SMJ. See id.

On January 17, 2018, Johnson filed his complaint, and the court issued six summonses. See [D.E. 1, 4]. Johnson delivered six sets of the complaint and summons to the Sheriff's Department Civil and Warrant Division. See Compl. ¶ 14(d). On January 18, 2018, Highsmith sent a letter to Johnson informing him that because sheriff's deputies were defendants in the case, the sheriff's office could not serve the complaint and summons. See id. ¶ 14(e); [D.E. 30-2]. On January 26, 2018, Johnson filed his first amended complaint, naming Highsmith as a defendant. See [D.E. 6]. Thereafter, defendants moved to dismiss Johnson's first amended complaint ("complaint"). See [D.E. 11, 29, 39, 42]; Fed. R. Civ. P. 12(b)(6).

## II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se

3

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (emphasis and quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5.

A.

Johnson names Brunswick County, Brunswick County Board of Education, Detective Rebecca Allen, Detective Brandon Fuller, Mose Highsmith, Principal Michael Hodges, and Assistant Principal James Simmons as defendants. Compl. ¶¶ 2–9. Johnson's complaint has four sections labeled as causes of action. See id. ¶¶ 15–77. In count one, Johnson seeks relief against all defendants under 42 U.S.C. § 1983 for a violation of SMJ's Fifth Amendment and Fourteenth Amendment protection against self-incrimination. See id. ¶¶ 18–30. In count two, Johnson seeks relief under section 1983 against all defendants for a conspiracy to violate SMJ's Fifth Amendment and Fourteenth Amendment protection against self-incrimination. See id. ¶¶ 31–44. In count three, Johnson seeks relief under section 1983 against Allen, Fuller, Brunswick County, and Brunswick County Board of Education for a violation of SMJ's and Johnson's Fourth Amendment protection against unreasonable searches and seizures. See id. ¶¶ 45–59. In count four, Johnson seeks relief under section 1983 against all defendants for a violation of Johnson's Fourteenth Amendment due

4

process rights concerning his freedom of speech and the care, custody, and management of SMJ. See id. ¶¶ 60–77.

1.

Non-attorney pro se plaintiffs may not litigate their minor children's claims. See Myers v. Loudoun Cty. Pub. Sch., 418 F.3d 395, 400 (4th Cir. 2005); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam); Myers v. North Carolina, No. 5:12–CV–714–D, 2013 WL 4456848, at *1 (E.D.N.C. Aug. 16, 2013) (unpublished), aff'd sub nom. Myers v. Bizzell, 673 F. App'x 310 (4th Cir. 2016) (per curiam) (unpublished).[1] The policy animating the rule against allowing non-attorney pro se plaintiffs to litigate their children's claims is primarily "based on protection of the legal interests of the minor and the impropriety of a person who is not a member of the bar representing another person in court proceedings." Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005); see Myers, 418 F.3d at 400. Thus, the court dismisses count one, count two, and any remaining claims that Johnson made on SMJ's behalf.[2]

2.

As for Johnson's Fourth Amendment claim in count three against Allen, Fuller, Brunswick County, and Brunswick County Board of Education ("Board of Education"), Johnson argues that defendants violated his Fourth Amendment rights because he had a reasonable expectation of privacy in the tablet that detectives searched. See Compl. ¶ 49.

---

[1] Johnson claims to have a J.D. degree. Johnson does not claim to be a member of the bar of North Carolina, the United States District Court for the Eastern District of North Carolina, or any other court.

[2] Alternatively, Johnson's Fifth Amendment claim fails to state a claim because there was no criminal proceeding against SMJ. See, e.g., Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005); Riley v. Dorton, 115 F.3d 1159, 1164 (4th Cir. 1997), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010).

5

Johnson names Brunswick County as a defendant because he alleges Brunswick County employs detectives Allen and Fuller. See id. ¶ 3. A county may be held liable under section 1983 only "for acts for which the county has final policymaking authority." Worrell v. Bedsole, No. 95-2816, 1997 WL 153830, at *5 (4th Cir. Apr. 3, 1997) (unpublished); see City of St. Louis v. Praprotnik, 485 U.S. 112, 124–25 (1988). Under North Carolina law, the Office of the Sheriff has the final policymaking authority over all matters concerning the Sheriff's Department. See Worrell, 1997 WL 153830, at *5; Mccollum v. Robeson Cty., No. 5:15-CV-451-BO, 2016 WL 3067723, at *1–2 (E.D.N.C. May 27, 2016) (unpublished). Thus, because Brunswick County does not have final policymaking authority over the Sheriff's Department, "the complaint does not allege that the constitutional violation was undertaken to effectuate an official policy or custom of the county." Evans v. Onslow Cty., No. 5:16-CT-3267-FL, 2017 WL 1900274, at *2 (E.D.N.C. May 8, 2017) (unpublished). Accordingly, the court dismisses Johnson's claim against Brunswick County.

Similarly, Johnson fails to state a claim against the Board of Education. When a municipal entity is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). A violation results from a municipal entity's "policy or custom" if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690–91, 694; see Praprotnik, 485 U.S. at 121.

6

Johnson cites the Board of Education's policy concerning criminal behavior as the basis of his claim. See [D.E. 6] ¶¶ 10–11; [D.E. 6-2] 2. The policy provides that

> Criminal or other illegal behavior is prohibited. Any student who the principal reasonably believes to have engaged in criminal behavior on the school premises or at school activities will be subject to appropriate disciplinary action as stated in applicable Board policies and may be criminally prosecuted as well.
>
> School officials shall cooperate fully with any criminal investigation and prosecution. School officials shall independently investigate any criminal behavior that also violates school rules or Board policy.

[D.E. 6-2] 2. The policy itself is not unconstitutional. Where a policy is not itself unconstitutional, the plaintiff must plausibly allege that the policy was the "moving force" behind the constitutional violation. See, e.g., Polk Cty. v. Dodson, 454 U.S. 312, 326 (1981); Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991); Spell v. McDaniel, 824 F.2d 1380, 1387–88 (4th Cir. 1987); Vincent v. Prince George's Cty., 157 F. Supp. 2d. 588, 592 (D. Md. 2001). Johnson has not plausibly alleged that the policy was the "moving force" behind the alleged violation of his Fourth Amendment rights. See, e.g., Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); Perry v. Pamlico Cty., 88 F. Supp. 3d 518, 541 (E.D.N.C. 2015); Smith v. Cty. of Los Angeles, No. CV 12–02444–JAK (JEM), 2013 WL 1829821, at *6 (C.D. Cal. Mar. 12, 2013) (unpublished), report and recommendation adopted by 2013 WL 1628609 (C.D. Cal. Apr. 16, 2013) (unpublihsed); Okolo v. Metro. Gov't of Nashville, 892 F. Supp. 2d 931, 946 (M.D. Tenn. 2012). Johnson merely conclusorily alleges that the policy caused detectives Allen and Fuller to violate his Fourth Amendment rights. See [D.E. 6] ¶ 49. Accordingly, the court dismisses Johnson's claim against the Board of Education.

As for Johnson's Fourth Amendment claim against Allen and Fuller, Allen and Fuller are entitled to qualified immunity. The court must ask two questions to determine whether qualified

7

immunity applies. See, e.g., Pearson v. Callahan, 555 U.S. 223, 231–32 (2009); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009); Miller v. Prince George's Cty., 475 F.3d 621, 626–27 (4th Cir. 2007). First, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted); see Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam). Courts have discretion to decide which prong to address first. Pearson, 555 U.S. at 236. Defendants are entitled to dismissal on qualified immunity grounds if the answer to either question is "no." See, e.g., Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quotation omitted); see District of Columbia v. Wesby, 138 S. Ct. 577, 589–90 (2018); Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) (per curiam); Ziglar v. Abbasi, 137 S. Ct. 1843, 1866–67 (2017); White v. Pauly, 137 S. Ct. 548, 551–52 (2017) (per curiam); Mullenix, 136 S. Ct. at 308–09; Taylor v. Barkes, 135 S. Ct. 2042, 2044–45 (2015) (per curiam); City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015); Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam); Reichle v. Howards, 566 U.S. 658, 664 (2012); Pearson, 555 U.S. at 231. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Wesby, 138 S. Ct. at 590; Abbasi, 137 S. Ct. at 1867; Pauly, 137 S. Ct. at 551. In the Fourth Amendment context, "a body of relevant case law is usually necessary" to show that the

8

unlawfulness of the officer's conduct placed the constitutional question beyond debate. Wesby, 138 S. Ct. at 590 (quotation omitted).

As stated, Johnson cannot proceed with his claim that SMJ's Fourth Amendment rights were violated. Thus, the court considers whether Johnson's "clearly established right" was violated when law enforcement searched SMJ's tablet. In making this assessment, the court should

> (i) identify[] the right at issue at the appropriate level of generality, (ii) identify[] appropriate sources of law that can clearly establish the right, and (iii) resolv[e] whether these appropriate sources of law did, in fact, clearly establish the right at the time of the alleged violation.

Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 724–25 (E.D. Va. 2015). As for the first determination, the right at issue must be defined at a high level of particularity. See Kisela, 138 S. Ct. at 1152; Wesby, 138 S. Ct. at 590; Pauly, 137 S. Ct. at 552; Mullenix, 136 S. Ct. at 309; Sheehan, 135 S. Ct. at 1775–76; Braun v. Maynard, 652 F.3d 557, 562 (4th Cir. 2011); Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007) (quotation omitted). Here, the right at issue is Johnson's alleged reasonable expectation of privacy in the tablet he gave to SMJ to take to school. As for the second determination, generally only decisions of the Supreme Court, Fourth Circuit, and the highest court of the state in which the conduct occurred are relevant. See Johnson, 597 F.3d at 176; Rector & Visitors of George Mason Univ., 132 F. Supp. 3d at 725.[3] As for the final determination, Johnson's constitutional right to be free from the search of his tablet, which he gave to SMJ to take to school, was not "clearly" established at the time of the search. Johnson does not cite any relevant authority from the Supreme Court, the Fourth Circuit, or the Supreme Court of

---

[3] The Supreme Court has held that its precedents qualify as controlling for purposes of qualified immunity. See Wesby, 138 S. Ct. at 591–93. The Supreme Court has reserved judgment on whether decisions of a federal court of appeals are a source of clearly established law for purposes of qualified immunity. See id.; see also Kisela, 138 S. Ct. at 1152–54; Taylor, 135 S. Ct. at 2044–45; Sheehan, 135 S. Ct. at. 1776; Carroll, 135 S. Ct. at 350.

9

North Carolina for the proposition that he had a reasonable expectation of privacy in the tablet he gave to his daughter. See, e.g., Wesby, 138 S. Ct. at 591–93. Although Johnson alleges that he owns the tablet, property ownership alone is not determinative of whether an individual's Fourth Amendment rights have been violated. See Byrd v. United States, 138 S. Ct. 1518, 1526–30 (2018); Rawlings v. Kentucky, 448 U.S. 98, 105 (1980); Casella v. Borders, 404 F. App'x 800, 802–04 (4th Cir. 2010) (per curiam) (unpublished); Wang v. United States, 947 F.2d 1400, 1403 (9th Cir. 1991); United States v. One 1977 Mercedes Benz, 708 F.2d 444, 449 (9th Cir. 1983); United States v. Dyar, 574 F.2d 1385, 1390 (5th Cir. 1978); United States v. Grossman-Crist, No. 5:14-cr-44-04, 2014 WL 7336284, at *5 (D. Vt. Dec. 22, 2014) (unpublished) ("But ownership of an object which is no longer in one's possession has never been sufficient by itself to establish an expectation of privacy."). Although Johnson may have hoped that SMJ would not allow anyone to search the tablet, "hopes and intentions do not make Fourth Amendment rights." Casella, 404 F. App'x at 803. Thus, Fuller and Allen have qualified immunity, and the court dismisses Johnson's Fourth Amendment claim.

3.

As for Johnson's due process claim in count four, Johnson alleges that the defendants conspired to deprive him of his liberty interest in his freedom of speech and the care, custody, and management of SMJ. See Compl. ¶¶ 60–77. Specifically, Johnson contends that defendants violated his rights by interrogating SMJ without his consent. See id. ¶ 65.

Parents have a constitutionally protected liberty interest in the "care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 65 (2000); Pierce v. Soc'y of Sisters, 268 U.S. 510, 534–35 (1925); Meyer v. Nebraska, 262 U.S. 390, 398–403 (1923); Wofford v. Evans, 390 F.3d 318, 324–25 (4th Cir. 2004). This interest protects parents from the state's power to interfere with a

10

parent's right to custody and control of her child. See Martin v. Saint Mary's Dep't of Soc. Servs., 346 F.3d 502, 505–06 (4th Cir. 2003). Although the Supreme Court has never "define[d] the precise boundaries of a parent's right to control a child's upbringing and education, it is clear that the right is neither absolute nor unqualified." Bailey v. Va. High Sch. League, Inc. 488 F. App'x 714, 716 (4th Cir. 2012) (per curiam) (unpublished) (quotation and citation omitted); see Wofford, 390 F.3d at 325.

Johnson has failed to plausibly allege a cognizable section 1983 claim for violation of his due process rights because Johnson's liberty interest in the care and custody of SMJ was not violated. The in-school interview of SMJ did not violate Johnson's liberty interest in the care and custody of his child. See, e.g., Wofford, 390 F.3d at 325; Guan N. v. N.Y.C. Dep't of Educ., No. 11 Civ. 4299(AJN), 2014 WL 1275487, at *26 (S.D.N.Y. Mar. 24, 2014) (unpublished); K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 215–16 (S.D.N.Y. 2013); Philips v. Cty. of Orange, 894 F. Supp. 2d 345, 376 (S.D.N.Y. 2012); Love v. Riverhead Cent. Sch. Dist., 823 F. Supp. 2d 193, 200–01 (E.D.N.Y. 2011) ("[Plaintiff] was never physically removed from his school, home or from the care of his parents. The Plaintiffs do not identify a case, and this Court has not uncovered one, where questioning or searching a child at school in connection with a drug investigation without the parents' consent or notice constitutes a removal or other interference with the parent-child relationship that would trigger a parent's due process interests."). Furthermore, due process does not require school administrators to notify a student's parents before the student is interviewed on school grounds. See Wofford, 390 F.3d at 324–25 ("The Constitution does not impose a duty of parental notification before the pupil's disciplinary detainment while such school guardianship persists."); Willard v. City of Myrtle Beach, 728 F. Supp. 397, 400 (D.S.C. 1989). Thus, because defendants did not infringe on Johnson's liberty interest, he fails to allege a procedural or substantive

11

due process claim under section 1983. See, e.g., Daggy v. Staunton City Sch., No. Civ.A. 5:04CV00023, 2004 WL 2900653, at *3 (W.D. Va. Dec. 13, 2004) (unpublished), aff'd, 158 F. App'x 487 (4th Cir. 2005) (per curiam) (unpublished).[4]

To the extent that Johnson alleges that defendants violated his liberty interests by failing to comply with a Brunswick County School Board policy concerning the release of students from the school's custody and parents' involvement in student discipline, see Compl. ¶¶ 63, 65, that claim also fails. Section 1983 does not provide a remedy for violations of state or local law or policies. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 119 (1992). Rather, a school board's policies merely "establish[] guidelines to be followed" and do not confer any constitutional right. Myers v. Morris, 810 F.2d 1437, 1469 (8th Cir. 1987); see White v. DeKalb Cty., 665 F. App'x 795, 797 (11th Cir. 2016) (per curiam) (unpublished); Wofford, 390 F.3d at 324–25; Weller v. Dep' of Soc. Servs., 901 F.2d 387, 392 (4th Cir. 1990); Doe v. Hennepin Cty., 858 F.2d 1325, 1328 (8th Cir. 1988). Thus, even if defendants failed to follow a school board policy, such failure does not create a cognizable section 1983 claim. See, e.g., Love, 823 F. Supp. 2d at 200–01.[5]

---

[4] To the extent Johnson alleges that he has a due process right to protect SMJ from making self-incriminating statements, see [D.E. 64-1] 53, that claim also fails. See Wofford, 390 F.3d at 324–25. Moreover, Johnson does not plausibly allege that SMJ made any "self-incriminating statements" that were used against her in a criminal proceeding.

[5] To the extent Johnson alleges a conspiracy claim under 42 U.S.C. § 1983, see Compl. ¶¶ 1, 60, that claim also fails. To state a claim for conspiracy, Johnson must plausibly allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). To show joint, concerted action, plaintiffs must, at minimum, provide "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. Conclusory allegations of a conspiracy do not satisfy this "meeting of the minds" element and therefore fail to state a claim. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1376–77 (4th Cir. 1995); Gooden v. Howard Cty., 954 F.2d 960, 970 (4th Cir. 1992) (en banc). Johnson fails plausibly to allege a "meeting of the minds" between any of the named defendants or any shared objective of violating his constitutional rights. See Bartko v. Wheeler, No.

## III.

### A.

Johnson has twice moved for leave to file amended complaint. See [D.E. 34, 64]. A party generally may amend his complaint once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). After expiration of this time period, a party may amend only with either the opposing party's written consent or the court's leave. See Fed. R. Civ. P. 15(a)(2). A court "should freely give leave when justice so requires." Id. However, a district court may deny a plaintiff's request for leave to amend the complaint when the amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962); Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439 (4th Cir. 2011). An amendment is futile if the amended complaint would fail to state a claim upon which relief can be granted. See, e.g., Van Leer v. Deutsche Bank Sec., Inc., 479 F. App'x 475, 479 (4th Cir. 2012) (unpublished); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 375 (4th Cir. 2008).

Johnson seeks leave to amend his complaint to: (1) add Brunswick County Sheriff's Department and ABC Surety Company as defendants; (2) delete claims in which he sought to assert SMJ's rights; and (3) add a First Amendment retaliation claim against all defendants. See [D.E. 64]. Johnson attached a proposed second amended complaint, which is 98 pages long, includes repetitive allegations and three causes of action. See [D.E. 64-1].

---

No. 5:14–CT–3043–D, 2014 WL 3563359, at *8 (E.D.N.C. July 18, 2014) (unpublished); Holbach v. Jenkins, No. 4:09-CV-026, 2009 WL 2382756, at *7 (D.N.D. July 30, 2009) (unpublished). Furthermore, as stated, Johnson has not plausibly alleged the deprivation of a constitutional right. See, e.g., Massey v. Ojaniit, 759 F.3d 343, 358 (4th Cir. 2014).

As for Johnson's proposed amendment to add ABC Surety Company as a defendant, ABC Surety Company is not a proper defendant for numerous reasons. First, Johnson has not plausibly alleged that ABC Surety Company is a state actor. To state a claim under section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Thus, any section 1983 claim against ABC Surety Company would be dismissed. See Wiggins v. 11 Kew Garden Court, 497 F. App'x 262, 263 (4th Cir. 2012) (per curiam) (unpublished). Second, and in any event, Johnson fails to allege ABC Surety Company's personal involvement. A section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell, 436 U.S. at 691–92; Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Accordingly, this proposed amendment is futile.

As for Johnson's proposed amendment to add the Brunswick County Sheriff's Department as a defendant, sheriff's departments in North Carolina do not have the legal capacity to be sued. See, e.g., Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 393 (4th Cir. 2014); Torchia v. Cherokee Cty. Sheriff's Dep't, No. 2:14–cv–00020–MR–DLH, 2015 WL 248280, at *6 (W.D.N.C. Jan. 20, 2015) (unpublished); Cooper v. Brunswick Cty. Sheriff's Dep't, No. 7:10-CV-14-D, 2011 WL 738610, at *4 (E.D.N.C. Feb. 7, 2011) (unpublished) (collecting cases), report and recommendation adopted by, 2011 WL 736670 (E.D.N.C. Feb. 23, 2011) (unpublished); Hill v. Robeson Cty., 733 F. Supp. 2d 676, 690 (E.D.N.C. 2010); Parker v. Bladen Cty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008). Accordingly, this proposed amendment is futile.

As for Johnson's proposed retaliation claim, this amendment is also futile because Johnson fails to state a claim. Johnson alleges that Highsmith retaliated against him for filing a complaint

14

and for sending "complaining" e-mails to the Brunswick County Sheriff's Department concerning SMJ's in-school interview. See [D.E. 64-1] 69. Specifically, Johnson contends that Highsmith retaliated against him by "physically tak[ing] the six sets of official Federal Summons and Complaint that [Johnson] had delivered to the Civil Section of the Civil and Warrant Division" because "he was not going to allow the Civil Section to carry out the BC Sheriff's statutory responsibility for service of process of a Federal Summons and Complaint to each of those defendants." Id. Furthermore, Johnson alleges that Allen, Fuller, Hodges, Simmons, and Highsmith, retaliated against him by manufacturing evidence and making false statements concerning SMJ. See id. at 69–70.

In order to state a First Amendment retaliation claim under section 1983, a plaintiff must allege that: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (alterations omitted); see Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). A plaintiff "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine, 411 F.3d at 500; see Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). Moreover, a plaintiff must show that "defendant's conduct resulted in something more than a 'de minimis inconvenience' to [his] exercise of First Amendment rights." Baltimore Sun Co., 437 F.3d at 416 (quotation omitted); see Constantine, 411 F.3d at 500.

Highsmith's actions in returning the warrants to Johnson with a letter explaining why the sheriff's department could not serve the warrants would not deter a person of ordinary firmness from exercising his First Amendment rights. See, e.g., Hoye v. Gilmore, 691 F. App'x 764, 766 (4th Cir. 2017) (per curiam) (unpublished); Sims v. Piazza, 462 F. App'x 228, 233 (3d Cir. 2012) (per curiam)

15

(unpublished); Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558, 569 (E.D. Pa. 2004). In any event, Johnson has not plausibly alleged that Highsmith returned the warrants to Johnson in retaliation for filing a complaint and sending complaining e-mails. See Iqbal, 556 U.S. at 678–79; Francis, 588 F.3d at 193; cf. Goodwin v. Furr, 25 F. Supp. 2d 713, 717–18 (M.D.N.C. 1998) (holding that under North Carolina law the sheriff cannot serve process on his deputies). As for Johnson's claim concerning false evidence, Johnson has not plausibly alleged that Allen, Fuller, Hodges, Simmons, and Highsmith manufactured false evidence, much less that they did so in retaliation for Johnson's exercise of his First Amendment rights. Johnson's vague and conclusory allegations are insufficient to survive a motion to dismiss. See Iqbal, 556 U.S. at 678–79; Francis, 588 F.3d at 193. Accordingly, the court denies Johnson's motions to amend as futile.

### B.

Johnson also moved for leave and an extension of time to file a surreply. Johnson argues that defendants raised new material in their reply brief. See [D.E. 52].

A party must seek leave of the court to file a surreply. See, e.g., Anderson v. Jordan, No. 7:17-CV-112-BO, 2018 WL 2390582, at *3 (E.D.N.C. May 25, 2018) (unpublished). "If a court does not rely upon the new material raised in the opposing party's reply brief to reach its decision in a matter, then a surreply is superfluous and unnecessary." Susko v. Cox Enters., No. 5:07CV144, 2008 WL 4279671, at *1 (N.D. W. Va. Sept. 16, 2008) (unpublished). The court did not rely on new material raised in the defendants' reply briefs to reach its decision. Accordingly, the court denies Johnson's motion for leave to file a surreply.

### IV.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 11, 29, 39, 42], DISMISSES the complaint, DENIES as moot defendants' motions to strike [D.E. 50, 58, 60],

DENIES as futile Johnson's motions to amend [D.E. 34, 64], and DENIES Johnson's motion for leave to file a surreply [D.E. 52].

SO ORDERED. This 7 day of September 2018.

*[signature]*
JAMES C. DEVER III
Chief United States District Judge